# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|

ISSAC NYAN,                          )
                                     )
                Plaintiff,           )
                                     )        No.  20-343C
v.                                   )        (Filed: April 5, 2021)
                                     )
THE UNITED STATES OF AMERICA,        )
                                     )
                Defendant.           )
                                     )
                                     )
                                     )

*Tyler Evans*, Covington & Burling LLP, Washington, DC, for Plaintiff. *Jennifer L. Plitsch*, *Sarah M. Shepson*, Covington & Burling LLP, Washington, DC, *Bart Stichman*, *Rochelle Bobroff, Esther Leibfarth,* and *David Sonenshine*, National Veterans Legal Services Program, Washington, DC, Of Counsel.

*Douglas G. Edelschick*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Jeffrey Bossert Clark*, Acting Assistant Attorney General. *Lieutenant Clayton McCarl*, U.S. Department of the Navy, Office of the Judge Advocate General, Washington, DC, Of Counsel.

## OPINION AND ORDER

**Kaplan, Chief Judge.**

The plaintiff in this case, Isaac Nyan, filed this suit to challenge the determination of the United States Department of the Navy (the "Navy") that his lower back pain and chronic migraines did not render him unfit for continued service as a Hospital Corpsman at the E4 grade. He seeks correction of his record to reflect a disability retirement, as well as back pay.

The case is currently before the Court on the parties' cross-motions for judgment on the administrative record and Mr. Nyan's motion to supplement the administrative record. For the reasons set forth below, Mr. Nyan's motion for judgment on the administrative record is **GRANTED**, ECF No. 13, and his motion to supplement the administrative record is **DENIED**, ECF No. 14. The government's motion for judgment on the administrative record is **DENIED**. ECF No. 12.

# BACKGROUND

## I.    Overview of Mr. Nyan's Service

Mr. Nyan enlisted in the Navy Ready Reserve Program on June 13, 2008. Admin. R. ("AR") 3297, ECF No. 11-3. On January 7, 2009 he transferred to the Regular Component of the Navy. Id. at 3348. Mr. Nyan was assigned to the National Naval Medical Center in Bethesda, Maryland, from 2009 until mid-2011 during which time his occupation (i.e., "rating") was that of a "Hospitalman." Id. at 3254, 3259, 3283, 3285.[1]

Mr. Nyan received positive performance evaluations during this assignment. See id. at 3259 (2009–2010 performance evaluation); see also id. at 3255 (2010–2011 performance evaluation observing that Mr. Nyan was "[r]ecognized among his peers for outstanding patient care" and "rewarded with a certificate of appreciation from the [traumatic brain injury] unit," that he "demonstrated consistent growth," and "[was] ready to assume roles of greater responsibility").

From July 28 to September 30, 2011, Mr. Nyan attended Field Medical Service School to qualify for service as a Field Medical Service Technician. Id. at 3208; see also id. at 3342 (identifying "Field Medical Service Technician" as his primary specialty for the preceding five years and nine months as of June 10, 2017). After he completed his training in September of 2011, the Navy placed Mr. Nyan in the First Medical Battalion unit of the First Marine Logistics Group. Id. at 3208. A year later, on September 16, 2012, the Navy promoted Mr. Nyan to petty officer third class in the grade of E4 with a rating of a Hospital Corpsman. Id. at 3348. He remained in the Navy until June 10, 2017 when he was honorably discharged. Id. at 3342.

## II.    Mr. Nyan's Service-Related Medical Impairments

During his service, Mr. Nyan developed several medical conditions that affected his ability to perform his duties. First, during his service at the National Naval Medical Center, Mr. Nyan injured his lower back while lifting patients. As a result, he developed reoccurring back pain that worsened in the ensuing years. Id. at 192, ECF No. 11-1; see also id. at 1260. In April of 2013, Mr. Nyan underwent several months of physical therapy for his lower back pain, which had been exacerbated in Field Medical Service School and in performing his assigned duties. Id. at 192.

In the meantime, in or around January of 2013, during company physical training, Mr. Nyan hit his head on the ground, which caused him to black out. Id. at 192, 1482. A few days later, he began to experience migraines, which persisted and ultimately became chronic in nature. Id. at 192.

On August 6, 2013, Mr. Nyan sought mental health treatment for symptoms that began in 2010 after a patient on whom he was performing CPR died. Id. at 167. He met on that date with a

---

[1] See The Department of the Navy Disability Evaluation Manual, SECNAVINST 1850.4E encl. 2, § 2057(d) (defining a member's "Rating" as "[t]he occupational fields prescribed for Sailors ([e.g.,] BM, Botswain's Mate; DT, Dental Technician; etc.)").

Licensed Clinical Social Worker, Melissa Marrs, who diagnosed him as suffering from insomnia and adjustment disorder with depressed mood. Id. at 2747–48. Ms. Mars continued to treat him over the ensuing months until at least April of 2014. Id. at 1259.

In December of 2013, the Navy reassigned Mr. Nyan to the Naval Hospital in Camp Pendleton. Id. at 3208. Sometime during this period (the administrative record does not reveal when), the Navy placed him on limited duty because of his lower back pain. Id. at 508, ECF No. 11-2.[2] On March 19, 2014, a medical officer approved him to return to full duty because he had successfully completed medical treatment and reported being pain free. Id.

In October of 2015, Mr. Nyan was in a car accident that resulted in chronic neck pain and worsened his migraines. Id. at 192, 1360, 1394. Despite medical treatment, his "chronic" and "debilitating" migraines escalated. Id. at 192; see also id. at 494 (letter of medical necessity from neurologist stating Mr. Nyan had "frequent and severe" migraines); id. at 1258, 1261–62 (documenting multiple medical encounters for migraines and headaches beginning as early as September of 2013 until at least August of 2016); id. at 1269 (noting medical encounters for traumatic brain injury in October, November, and December of 2016).

On October 29, 2015, a neurologist, Dr. Vijay Hegde, wrote a letter of medical necessity for Mr. Nyan to "be placed on day shift only, in lieu of alternating between days and nights" as an accommodation for his "frequent and severe" "chronic migraines." Id. at 494. While Dr. Hegde "recognize[d that] this accommodation w[ould] unduly burden his fellow corpsm[en]," he noted that the day-shift accommodation would be in Mr. Nyan's best interest. Id.

The next month, during a physical readiness test ("PRT"), Mr. Nyan experienced a migraine headache, began to feel lightheaded, and then passed out. Id. at 2393. The Navy subsequently granted him a medical waiver from participation in future PRTs. Id. at 191.

Because of continuing lower back pain, the Navy returned Mr. Nyan to limited duty on March 14, 2016. Id. at 513. As a result of the limited duty assignment, Mr. Nyan was not allowed to participate in unit physical training, undergo a PRT, or be deployed. Id. Other limitations from full duty included no hiking or running, no standing for prolonged periods of time, no watchstanding, and no participation in field operations. Id.

Thereafter, beginning in June of 2016 until his discharge about a year later, Mr. Nyan served as the "Quality Management's Medical Support Staff assistant." Id. at 3345. His performance evaluation reveals that as a medical support staff assistant he conducted monthly audits and verified and maintained credentialing and privileging applications, as well as medical licenses and certifications for staff of the Naval Hospital. He delivered no patient care. Id.; see also id. at 186 (statement by his commanding officer that in his assignment to the Naval Hospital Camp Pendleton's Quality Management Department, Mr. Nyan served "as a clerk answering

---

[2] A military member is placed on temporary limited duty in "cases in which the prognosis is that the member can be restored to full duty within the specified period," which should "normally not . . . exceed 16 months per career." SECNAVINST 1850.4E encl. 2, § 2082.

phones and taking messages"). In addition, according to his commanding officer, Mr. Nyan was out of the office attending medical appointments an average of ten hours a week. Id. at 184.

Several months after he began work as a medical support staff assistant, Mr. Nyan was hospitalized at the Balboa Inpatient Psychiatric Unit at the Navy Medical Center in San Diego from September 7 to September 9. Id. at 1618–19. He was admitted to the medical center after expressing suicidal intentions to his wife. Id. The medical center's psychiatric team diagnosed him with post-traumatic stress disorder and depressive disorder. Id. at 167. On December 10, 2016 the Navy extended his limited duty status for an additional six months to allow him "to continue medical treatment, and/or medical board processing." Id. at 3209.

### III.    Referral to the Navy's Disability Evaluation System

####   A.    <u>Overview of the Navy's Disability Evaluation System</u>

Section 1201(a) of Chapter 61 provides that "[u]pon a determination by the Secretary concerned that [an eligible service member] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a). The Department of the Navy Disability Evaluation Manual (hereinafter "the Manual") governs the processing of disability cases for members of the United States Navy. The 2002 version of the Manual (SECNAVINST 1850.4E) applies to Mr. Nyan's case.

Pursuant to the Manual, the disability evaluation process begins with a Medical Evaluation Board ("MEB") finding that the service member's fitness for continued naval service is "questionable by reason of physical or mental impairment." SECNAVINST 1850.4E encl. 3, § 3201(a) (Def.'s App. Accompanying Mot. for J. upon the Admin. R. ("Def.'s MJAR App.") at DA59–359, ECF No. 12-1); see also id. encl. 2, § 2043. The MEB may then refer the case to the Physical Evaluation Board ("PEB") for further consideration. See id. encl. 3, § 3102(c). The PEB acts on behalf of the Secretary of the Navy in making fitness determinations. Id. encl. 1, § 1004(a).

Upon referral by an MEB, an informal PEB ("IPEB") convenes to "screen incoming cases for acceptance and, if accepted, perform the initial disability evaluation on the basis of documentary review of case records." Id. encl. 4, §4201. The "sole standard" the PEB applies "in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." Id. encl. 3, § 3301. The IPEB reviews all relevant medical and non-medical records, including medical board reports, non-medical assessments, performance evaluations, and health records. Id. encl. 1, § 1004(b); id. encl. 4, § 4209. Upon reviewing the relevant records, the IPEB issues and provides the member with notice of its "preliminary findings." Id. encl. 1, § 1004(b); see also id. encl. 4, §§ 4208–11. If the IPEB concludes that the member is fit to continue naval service, then the preliminary findings become the final determination of the PEB. Id. § 4123(a)(2)(i). After the IPEB issues its findings, a claimant may submit "new and/or relevant medical information that may alter the findings." Id. § 4214(b). If the member does so, the IPEB may issue reconsidered findings or, if the IPEB deems no change in findings is warranted, the case will be finalized. Id.

Upon completion of its review, the IPEB refers the case to the President of the PEB for further processing. Id. § 4212(a). If a member who has been found unfit for service demands a hearing, the President must assign his or her case to a formal PEB. Id. § 4212(c)(1). In other cases where a member requests a hearing, the President has discretion to assign the case to a formal PEB. Id. § 4212(c)(2)–(4).

A claimant is given fifteen days after he receives notification of the IPEB's preliminary findings to either accept those findings or request reconsideration from the IPEB "and/or demand/request a personal appearance before a formal PEB." Id. encl. 3, § 3102(c). If the member accepts the findings of the IPEB, the case is finalized and the service's headquarters will separate, retire, or return the disability claimant to duty accordingly. Id. If he fails to make an election within fifteen days, then acceptance of the findings is presumed on the sixteenth day after he receives them. Id.; see also id. encl. 4, § 4216.

### B.   Medical Evaluation Board Assessment of Mr. Nyan

Mr. Nyan's case entered the Navy's Disability Evaluation System on August 25, 2016. AR 157–59. An MEB considered whether five separate conditions put into question Mr. Nyan's fitness for duty: low back pain, adjustment disorder with mixed anxiety, migraine with aura – intractable, paresthesia of skin, and chronic pain. Id. at 161. Specialists in sports medicine, mental health, and neurology at the Naval Medical Center in San Diego evaluated Mr. Nyan as part of the MEB review process. Id. at 162–65, 167–72, 174–81.

Dr. Todd May, a sports medicine medical evaluator, examined Mr. Nyan on August 22, 2016. Id. at 163. He reported that Mr. Nyan had been suffering back pain since October of 2009 which started "while lifting a patient." Id. at 163, 1738. Since then, Dr. May observed, Mr. Nyan "had pain off and on," and had undergone several forms of treatment, none of which had succeeded at returning him to full duty. Id. at 163. Dr. May stated that Mr. Nyan's "pain limit[ed] his ability" to do his job which "require[d] lifting/transferring patients" and "occasional prolonged sitting/standing." Id. Mr. Nyan also was "required to serve with the [Fleet Marine Force]," wrote Dr. May, but the "demands" of this position "worsen[ed] his pain." Id. His impression was that Mr. Nyan was "unable to accomplish these tasks without significant discomfort and he has exhausted all conservative care." Id. Dr. May recommended referral to the PEB for disposition.

In the neurology addendum to the MEB Report, Dr. Hegde (who had treated Mr. Nyan for his migraines from at least October of 2015 until August of 2016, see, e.g., id. at 1262) diagnosed Mr. Nyan with "chronic intractable migraine," id. at 180, 1736. Mr. Nyan's "debilitating" headaches had persisted despite various treatment attempts, explained Dr. Hegde, and caused Mr. Nyan to be unable to physically train with his unit, to perform the PRT, to "perform the duties on the hospital ward expected of him as a hospital corpsman," "to stand overnight duty," or to deploy. Id. at 183. Dr. Hegde stated that "as an HM3" Mr. Nyan was "required to do *ALL* of the above duties without difficulty," but that he had "been unable to do any of these for well over a year." Id. Thus, Dr. Hegde recommended "that he be referred to the PEB for disposition." Id.

On November 21, 2016, the MEB issued a mental health Addendum Report. Id. at 167–69. In it, Dr. Karis Irving, a psychiatrist, and Dr. Robert Lippy, a psychologist, diagnosed Mr. Nyan with chronic adjustment disorder with mixed anxiety and depressed mood. Id. at 167. Although these doctors noted that during his psychiatric hospitalization he had been diagnosed with "unspecified depressive disorder and posttraumatic stress disorder," it was their opinion that "further history and testing did not support these diagnoses as most appropriate." Id. at 168.[3] In addition, Drs. Irving and Lippy stated that Mr. Nyan's mental health symptoms caused only "mild interference" with his ability to perform his job. Id. at 169.

## C.   Assessment by the Informal Physical Evaluation Board

The Medical Evaluation Board referred Mr. Nyan to an IPEB in December of 2016. Id. at 166. Mr. Nyan's commanding officer, Dr. Chad Baasen, completed a non-medical assessment ("NMA")[4] for the PEB to consider in its fitness determination. Id. at 184–86. Dr. Baasen explained that Mr. Nyan's Navy Enlisted Classification/rate was that of a Field Medical Service Technician, but that he was currently assigned to an administrative role which was "outside of [his] specialty because of [a] medical condition." Id. at 184. He answered "no" to the question whether Mr. Nyan could perform within his rating. Id. Dr. Baasen stated that Mr. Nyan's medical conditions required him to miss work an average of ten hours per week. Id. Further, he stated that "[d]ue to current medical conditions, chronic migraines, chronic back pain, and mental health concerns," Mr. Nyan "cannot perform duties as a Hospital Corpsman." Id. at 185. Mr. Nyan, explained Dr. Baasen, "is unable to administer competent patient care," "unable to participate in any Military functions such as physical training or formations," and "is not deployable and so . . . cannot serve with a [Fleet Marine Force] unit which is an essential function of a Hospital Corpsman and Sailor." Id. Dr. Baasen opined that Mr. Nyan's medical conditions made it impossible for Mr. Nyan "to perform in the physical and stressful environment required by his rate as a Hospital Corpsman . . . now or in the future," and that those conditions had even "made it difficult for him to perform his administrative duties within the hospital." Id. at 186. Therefore, Dr. Baasen recommended "a medical discharge for Petty Officer Third Class Nyan so that he can continue with his care plan." Id.

On February 23, 2017, the IPEB convened and recommended that Mr. Nyan be found "Fit to Continue on Active Duty." Id. at 135. The Medical Officer based his opinion on Mr. Nyan's most recent performance evaluation, covering the period of time when he was on limited

---

[3] The doctors explained that the Clinical Psychologist who had performed mental health tests on Mr. Nyan had found his MMPI results "invalid" and that the M-FAST revealed "a potential for malingering." AR 168. Mr. Nyan wrote a December 20, 2016 "Addendum Rebuttal" in which he explained, among other things, that he had not understood many of the questions because English is his third language and he was not offered any translation services to complete the 560-question test. Id. at 171–72; see also id. at 349. After reviewing Mr. Nyan's rebuttal, Dr. Irving declined on behalf the team to make any changes to the Addendum Report. Id. at 173.

[4] The NMA is "a statement describing the impact of the service member's medical condition upon the member's ability to perform his/her normal military duties and to deploy." SECNAVINST 1850.4E encl. 11, § 11001(a).

duty performing clerical work as described above. Id. at 136. The medical officer commented that, "[p]er the most recent evaluation," Mr. Nyan was "performing in an above average fashion and [was] working in rate." Id.

Similarly, the Presiding Officer relied on Mr. Nyan's most recent evaluation, noting that his commanding officer had observed that Mr. Nyan "perform[ed] his duties in an exemplary manner, demonstrating superior performance." Id. The Presiding Officer therefore concluded that, in his view, the "evidence available to the board establishes that the member is able to reasonably perform duties of his office, grade, rank, or rating," and was therefore fit for duty. Id.

### D. Mr. Nyan's Request for a Formal Physical Evaluation Board

On February 27, 2017, Mr. Nyan requested a formal PEB hearing to contest the IPEB's fitness determination. Id. at 7. He asked the PEB to find him unfit based on his back pain, migraines, and mental health conditions. Id. Mr. Nyan submitted a memorandum from his commanding officer, Dr. Corry J. Kucik, in which he apparently attempted to address the IPEB's reliance upon Mr. Nyan's most recent performance evaluation as the basis for its fitness determination. Id. at 50. Dr. Kucik explained that "[m]edical concerns, conditions, impairments, etc. are not discussed or annotated on a member's periodic evaluation" even if they "have an impact on a member's performance." Id. Dr. Kucik stated that Mr. Nyan was a Field Medical Service Technician who had to be "transferred from an operation unit" to an administrative position "due to medical concerns." Id. Mr. Nyan's 2016 performance evaluation, Dr. Kucik explained, "was prepared based on his administrative performance as a General Duty Corpsman within the Patient Administration Department." Id. He noted that "[a]dministratively, [Mr. Nyan] performed his job in an exemplary manner," but that "physical limitations existed due to his medical conditions." Id.

On March 27, 2017, the IPEB recommended that Mr. Nyan's request for a formal PEB be denied. Id. at 2. According to the IPEB, Mr. Nyan had not supplied it with any new information. Id. Specifically, the Presiding Officer explained, there was "[n]o new information from command to show how diagnoses are unfitting or explain why great evals but [cannot] perform." Id.

On April 4, 2017, the President of the PEB notified the Chief of Naval Personnel that the PEB had found Mr. Nyan "FIT to perform the duties of his[] office, grade, or rank on active duty." Id. at 1.

## IV.   Discharge from the Navy

Mr. Nyan was honorably discharged from the Navy several months later, on June 10, 2017. Id. at 3342. At the time of his discharge, Mr. Nyan was a Hospital Corpsman Third Class with a pay grade of E4. Id. His Navy Enlisted Classification specialty was Field Medical Service Technician (NEC code HM-8404). Id.

## V.   The Present Case

Mr. Nyan filed his complaint in this Court on March 25, 2020. ECF No. 1. In Count I of his Complaint, Mr. Nyan claims the Navy's decision finding him fit for duty was "arbitrary,

capricious, unsupported by substantial evidence, and contrary to law because it failed to consider the complete factual record and to properly weigh relevant evidence." Id. ¶¶ 99–101. In Counts II, III, and IV, Mr. Nyan claims that the Navy failed to apply the correct legal standard in evaluating whether his medical conditions interfered with his ability to perform in his rating as a Hospital Corpsman and in his specialty qualification as a Field Medical Service Technician. Id. ¶¶ 102–11; id. ¶¶ 112–18; id. ¶¶ 119–24. Mr. Nyan asks the Court to correct his military records to reflect a medical retirement which would entitle him to disability pay and benefits as provided by 10 U.S.C. § 1201. Id. at 23. In the alternative, Mr. Nyan asks the Court to "remand Plaintiff's case to a PEB for a proper determination of his fitness for duty according to his rating at the time of his discharge, provide Plaintiff with his right to a hearing as guaranteed by 10 U.S.C. § 1214, and, if the PEB finds he was unfit, medically retire him effective on the date of his discharge." Id. at 23–24.

The government filed the administrative record on July 31, 2020, ECF No. 11, and filed its motion for judgment on the administrative record ("MJAR") on September 11, 2020, ECF No. 12. Plaintiff filed his cross-MJAR and response to the government's motion on October 23, 2020. ECF No. 13. Plaintiff filed a motion to supplement the administrative record on October 23, 2020. ECF No. 14. The government filed a combined reply in support of its MJAR and response to the Plaintiff's motion to supplement on November 20, 2020. ECF No. 15. Plaintiff filed his reply in support of his MJAR and reply in support of his motion to supplement the administrative record on December 11, 2020. ECF No. 16. Oral argument was held via videoconference on March 9, 2021.

## DISCUSSION

## I.   Jurisdiction

Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

It is well established that Section 1201 of Title 10 of the United States Code—which governs military disability retirement—is a money-mandating statute. Fisher v. United States, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991)). Accordingly, this Court has jurisdiction over Plaintiff's claims seeking monetary relief based on the Military Pay Act.

## II.     Standard of Review

In deciding a motion pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

The Court reviews the administrative record to determine whether the decision of military disability evaluation boards, including the PEB, is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. 296, 303 (1983); Strand v. United States, 951 F.3d 1347, 1351 (Fed. Cir. 2020), cert. denied, No. 20-111, 2020 WL 7132264 (U.S. Dec. 7, 2020) (citing Strickland v. United States, 423 F.3d 1335, 1343 (Fed. Cir. 2005)); see also Joslyn v. United States, 110 Fed. Cl. 372, 387 (2013) (citing cases for the proposition that the same standard of review applies to judicial review of decisions of the PEB and of the military correction boards).

The scope of this judicial review is a deferential one, as "determining who is fit or unfit to serve in the armed services is not a judicial province." See Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Id. at 1157. In determining whether the conclusion is supported by substantial evidence, "all of the competent evidence must be considered . . . and whether or not it supports the challenged conclusion." Id. (emphasis omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

## III.     Merits

The issue before the Court is whether substantial evidence supports the Navy's determination that Mr. Nyan was not unable, "due to physical disability . . . to reasonably perform the duties of his[] office, grade, rank, or rating." SECNAVINST 1850.4E encl. 3, § 3302(a).[5] It is clear on the record that three of the four remaining factors to be considered when

---

[5] Paradoxically, this is both the standard for a finding of unfitness and one of the four factors that must be considered in making the fitness determination. See SECNAVINST 1850.4E encl. 3, § 3304(a)(1) ("The member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating.").

determining "whether a member can reasonably perform his or her duties" tip in favor of a finding of unfitness. Id. § 3304(a). Specifically: (1) a medical treatment facility found that Mr. Nyan's medical conditions prohibited him from taking all or a portion of the Navy's physical readiness test; (2) the Navy determined that he was not deployable; and (3) he could no longer perform his specialized duties because of his medical conditions. See id. § 3304(a)(2)–(4).[6]

The Navy nonetheless found Mr. Nyan was not unfit for duty because it concluded that he could still reasonably perform the duties of a Hospital Corpsman at the E4 grade. This conclusion is not supported by substantial evidence.

Because this case was never brought before a review board, the Court's review is of the findings of the IPEB, which are recorded on a form entitled "Findings of Physical Evaluation Board Proceedings." AR 135–36. The form includes a section in which the Presiding Officer and the Medical Officer provided brief comments to support their conclusions that Mr. Nyan was fit, as well as "work cards" on which they each wrote a sentence or two summarizing the findings of the MEB and the recommendations contained in the NMA. Id. at 135–40.

Based on the limited explanation that can be derived from the form, the IPEB's conclusion that Mr. Nyan was fit—i.e., that he was able "to reasonably perform the duties of [his] office, grade, rank, or rating," SECNAVINST 1850.4E encl. 3, § 3302—appears to have been based largely if not entirely on comments contained in his most recent performance evaluation, which characterized as "exceptional" Mr. Nyan's performance of administrative tasks during his limited duty assignment, AR 3345. See id. at 136 (IPEB Medical Officer's comments) ("Per the most recent evaluation, the member is performing in an above average fashion and is working in rate."); id. (IPEB Presiding Officer's comments) ("HM3 Nyan's most recent evaluation . . . shows him as an above average performer.").

So far as the Court can discern, the IPEB did not make any findings regarding what duties a Hospital Corpsman at the E4 grade is expected to perform, notwithstanding that the Manual states that "[e]ach case [involving a fitness determination] is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." SECNAVINST 1850.4E encl. 3, § 3301. To the contrary, the comments on the form reflect consideration only of whether Mr. Nyan could perform the administrative tasks which the Navy gave him to do as part of his limited duty assignment. But the Navy assigned him limited duties,

---

[6] The government concedes that Mr. Nyan was unable to deploy or to take a physical readiness or fitness test. See Def.'s Reply in Support of Mot. for J. upon the Admin. R., Resp. to Pl.'s Cross-Mot. for J. upon the Admin. R., and Resp. to Pl.'s Mot. to Suppl. the Admin R. ("Def.'s Resp. & Reply") at 5, ECF No. 15. Further, the Navy requires Hospital Corpsmen with a Field Medical Service Technician specialty to "[p]rovide[] medical . . . services for personnel in field units." NAVPERS 18068F, vol. II, ch. 40 at 190 (Def.'s MJAR App. at DA370–660). The evidence shows that Mr. Nyan could not perform these duties. See, e.g., AR 186 (NMA) ("Because of his medical conditions [Mr. Nyan] is not able to perform his duties as a Fleet Marine Force Corpsman"); id. at 163 (medical record stating that Mr. Nyan was required to "serve with the [Fleet Marine Force], and these demands would worsen his pain").

the Court presumes, precisely because his physical disabilities prevented him from performing the full range of duties that he would otherwise have been expected to perform as a Hospital Corpsman at the E4 grade. See AR 513 (stating Mr. Nyan's limitations from full duty, among other things, required him not to engage in heavy lifting, prolonged standing, watchstanding, or field operations).

Further, the scope of a Hospital Corpsman's duties as set forth in the Navy's official issuances includes a broad range of functions consisting of, among other things, "assist[ing] in the prevention and treatment of disease, disability, and injury using first aid and preventive medicine procedures"; "assist[ing] in the prevention and treatment of dental conditions"; and "provid[ing] patient care" and "assist[ance] in the administration of medicinal and parenteral solutions." NAVPERS 18068F, vol. I, ch. 40 at HM-3 (Def.'s MJAR App. at DA360–69). The functions also include "the transportation of the sick and injured," id., as well as "serv[ice] as battlefield Corpsmen with Marine Corps and Naval Construction Forces, rendering emergency medical treatment to include initial treatment in a combat environment," id. at HM-5.

The government emphasizes that the occupational standards for Hospital Corpsmen states that they "function as clinical or specialty technicians, administrative personnel, and healthcare providers, assisting health care professionals in providing medical care to Navy, Marine Corps, and Joint Services personnel of the operational forces, shore activities, and other beneficiaries." Id. (emphasis added). Therefore, according to the government, Mr. Nyan was working within the scope of his rating when he was performing purely administrative duties. Def.'s Mot. for J. Upon the Admin. R. at 9, ECF No. 12.

There are two problems with this argument. First, the question is not whether Mr. Nyan was disabled from performing any and all work that a Hospital Corpsman might be assigned to perform, but rather whether he was disabled from performing work that a Hospital Corpsman at the E4 grade could "reasonably be expected to perform." SECNAVINST 1850.4E encl. 3, § 3301. Second, even if some Hospital Corpsman serve as "administrative personnel," there is nothing in the record to show that to be true for those Hospital Corpsmen who have attained the E4 grade. To the contrary, the evidence of record shows that, as a Hospital Corpsman at the E4 grade, Mr. Nyan was expected to perform a wide range of duties that went beyond sitting at a desk doing paperwork. According to the Manual of the Medical Department of the United States Navy ("NAVMED") P-117, at Article 9-9 (entitled "Duties of Hospital Corps Rates"), a Hospital Corpsman Third Class (HM3) "is normally assigned to duties involving direct patient care and to clinical services or [on-the-job training] in the more advanced clinical procedures." NAVMED P-117, ch. 9 at 9-7, https://www.med.navy.mil/directives/Pages/NAVMEDP-MANMED.aspx. In fact, Article 9-10 states that "Hospital Corps personnel who cannot perform effectively in the patient care environment should be recommended for administrative discharge or change in rating as appropriate, rather than arbitrarily reassigning them to non-patient care functions." Id. at 9-8.[7]

---

[7] The government observes that the Manual of the Medical Department "is a reference manual that does not purport to be, and is not, a binding Navy regulation with the force of law," and that it does not, in any event, govern the disability evaluation process. Def.'s Resp. & Reply at 3. The Court agrees that the Manual of the Medical Department does not have the force and effect of

Additionally, it does not appear that the IPEB took into consideration Mr. Nyan's grade level when it rendered its fitness determination. The Navy's Enlisted Occupational Standards for Hospital Corpsmen provide an extensive list of the "core tasks" of Hospital Corpsmen at various grade levels, including those at Mr. Nyan's grade (E4). NAVPERS 18068F, vol. I, ch. 40 at HM-5–HM-10. The vast majority of the core tasks specified for Hospital Corpsmen, E4, involve the provision of direct patient care, preventative occupational medicine, and other medical services. While the core tasks also include some administrative work (i.e., archiving records and preparing reports), those tasks appear to be incidental to the core patient care tasks.

Moreover, the Court finds instructive that the duties Mr. Nyan performed before the Navy placed him on limited duty were not administrative in nature. The record shows that his regular responsibilities involved a broad range of the patient care duties encompassed by his rating and grade. For example, his performance evaluation for the period between June 16, 2012 to June 15, 2013 stated that, "[a]s Senior Corpsman assigned to Sick Call Section," Mr. Nyan had "spearheaded the team that had over 5000 patient encounters" and had "[p]ersonally examined and treated over 600 patients." AR 3243. Similarly, his performance evaluation from a year later (June 16, 2014 to June 15, 2015) reflects that during that time he had "provided care to over 200 patients per month," "supervised [three Hospitalmen] on completion of daily tasks," and "[led] his team in over 2000 patient encounters." Id. at 3219.

By comparison, during Mr. Nyan's limited duty assignment, he served as "Quality Management's Medical Support Staff assistant." Id. at 3345 (performance evaluation from June 16, 2016 to June 10, 2017). In that capacity, he conducted monthly audits, and verified and maintained credentialing and privileging applications, as well as medical licenses and certifications for staff at the Naval Hospital. Id.

Additionally, the Navy physicians who examined Mr. Nyan seemed to have understood that Hospital Corpsmen at the E4 grade are expected to do more than sit at a desk. They remarked that his back pain "limit[ed] his ability to" perform certain requirements of his job like "lifting/transferring patients" and "prolonged sitting/standing." Id. at 163. Additionally, the neurology addendum to the MEB report stated that Mr. Nyan's chronic migraines rendered him "unable to perform the duties on the hospital ward expected of him as a hospital corpsman." Id. at 181.

Perhaps most importantly, the IPEB also appears to have ignored Navy regulations that required it to give significant weight to the NMA submitted by Mr. Nyan's commanding officer, Dr. Baasen. The NMA is "a statement describing the impact of the service member's medical condition upon the member's ability to perform his/her normal military duties and to deploy." SECNAVINST 1850.4E encl. 11, § 11001(a). The Manual provides that the portion of the NMA that "contains the commanding officer's comments . . . is the most critical and influential information in the NMA" because these comments "capture his/her observations and those of other senior command personnel as to how the service member's medical impairments have or

law. But Mr. Nyan is not seeking to enforce its provisions. Rather, he cites the Manual of the Medical Department as evidence of what duties the Navy expects Hospital Corpsmen to perform. Such evidence is directly relevant to the fitness determination under section 3301 of the Manual.

have not impacted the member's ability to function within the command." Id. § 11001(d)(2). "These comments are vital in assisting the PEB to make the proper determination of medically Fit or Unfit." Id.

Here, Dr. Baasen confirmed in his NMA that, during his limited duty assignment, Mr. Nyan was performing outside of his Hospital Corpsman rating and further that he was unable to perform within his rating. See AR 184. Dr. Baasen observed that Mr. Nyan's medical conditions, including his "chronic migraines, chronic back pain, and mental health concerns," did "not allow him to fully perform all duties and aspects of his rate at shore or sea commands." Id. at 186.

The Court notes that the work card that the Presiding Officer of the IPEB filled out reflects that he understood that the NMA stated that Mr. Nyan was not working in rate and was unable to work in rate. See id. at 139. But there is no explanation why he did not follow the NMA's recommendation. Worse, the other member of the IPEB, the Medical Officer, appears to have believed that the NMA indicated that Mr. Nyan was, in fact, working in rate. See id. at 138. And he also commented on his "work card" that based on the MEB report there was "insufficient evidence of missed work," even though Mr. Nyan's commanding officer stated that he missed an average of ten hours a week due to his ailments. Id.[8]

In short, the IPEB's fitness determination is inconsistent with the standards set forth in the Manual and is not supported by substantial evidence in the record before the Court. For that reason, the Court will grant Mr. Nyan's motion for judgment on the administrative record.

## CONCLUSION

On the basis of the foregoing, Mr. Nyan's motion for judgment on the administrative record is **GRANTED**, ECF No. 13, and the government's motion for judgment on the administrative record is **DENIED**, ECF No. 12. Mr. Nyan's motion to supplement the administrative record is **DENIED** as moot, ECF No. 14.

The Court **DIRECTS** the United States Department of the Navy to correct Mr. Nyan's military records to reflect retirement based on medical disability on June 10, 2017 (the date of his discharge) and to award him the appropriate backpay and other benefits. The Clerk is directed to enter judgment accordingly.

---

[8] Both the Presiding Officer and the Medical Officer noted on their work cards that the MEB had indicated that Mr. Nyan had "over-reported" his mental health symptoms. See AR 138–39. At the oral argument on the cross motions for judgment on the administrative record, the government conceded that the over-reporting concern is relevant only to the appropriate mental health diagnosis and not to Mr. Nyan's fitness for duty based on his lower back problems and migraine headaches. Oral Arg. Tr. at 12:5–13:8, ECF No. 20.

**IT IS SO ORDERED**.

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge